UNITED STATES DISTRICT AND BANKRUPTCY COURTS
FOR THE DISTRICT OF COLUMBIA

<u>Clay Keys</u>
  **Plaintiff,**

**VS**

<u>Christopher Rivers</u>
  Defendant,

<u>Ian Connors</u>
  Defendant,

<u>(2) John Does</u>

  Defendants,

<u>(19) John Does</u>

  Defendants, Of The Board Of Governors Of
   The American Correctional Association

Case: 1:23-cv-02183
Assigned To : Unassigned
Assign. Date : 7/26/2023
Description: Pro Se Gen. Civ. (F-DECK)

<u>COMPLAINT</u>

<u>**JURISDICTION**</u>

1. This is a civil action seeking declaratory & injunctive relief and monetary damages awarded in violation of plaintiffs rights under the First, Fifth, and Eighth & the Fourteenth Amendments of the United States Constitution. This court has jurisdiction based on and in violations of Title 28 U.S.C §1331(a) & Title 18 U.S.C. §371, §1341, §241, §242, §1349 & §1001(a)(3), §1985 and 42 U.S.C. 1997(e) and §4042(a) and of Article III of the Constitution.

(1)

RECEIVED

JUL 2 6 2023

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## VENUE

2.  Venue is determined under Title 28 U.S.C §1391(b). Whereas, the main defendant (Connors) and (2) John Does, reside in and are employed within the DISTRICT OF COLUMBIA, at the Federal Bureau Of Prisons Central Office in Washington, DC, and a substantial part of the events or ommisions given rise to these claims that occurred & the BOP Central Office is where the Bureau "rules" known as Program Statements, are written & originate from. Therefore, Venue is proper for the DISTRICT of COLUMBIA.

3.                          ## PARTIES

4.  **CLAY KEYS,** is a citizen of the United States and a federal prisoner, ID #22458-017 and is currently stationed at Po Box 9000, Seagoville, TX 75159, Plaintiff;

5.  **IAN CONNORS,** Defendant, a citizen of the United States and resides within the Washington, DC area. CONNORS is employed by the Federal Bureau of Prisons & is the chief Administrative Remedy Coordinator and is the final authority over the Bureau Administrative Remedy Procedures. His official address is 320 First Street NW, Washington, DC 20534.

6.  **(2) John Does,** Defendants, are citizens of the United States and reside within the Washington DC area. Both John Does are currently employed by the Bureau of Prisons and are direct assistants to the Admin Remedy Coordinator IAN CONNORS.

Their official address is 320 First St, Washington, DC.

7.  **Heriberto Tellez,** Defendant, is a citizen of the United States & is currently employed by the Bureau of Prisons as the South Central Regional Director. His official address is 344 Marine Forces Dr, Grand Prairie, TX, 75051;

8.  **C. Rivers,** Defendant, a citizen of the United States and is currently the warden at Seagoville Federal Correctional Inst. and her official address is Po Box 9000, Seagoville, TX 75159.

9.  **(19) John Does,** Defendants, are citizens of the United States and are employed by the American Correctional Association & are known as the Board of Governors. Their official address: 206 North Washington Street, Ste #200 Alexandria, VA 22314.

10.                  **STATEMENT   OF   FACTS**

This complaint involves (4) main issues:

A/B -Grievance Procedure Violations;  **(Two Issues Raised)**

C.   -Overcrowding/Over Capacity Violations;

D.   -The American Correctional Association "waiver";

E.   -Covid-19 Vaccine Violations-No Informed Consent.

11.                       **SUMMARY**

The evidence presented here, will demonstrate acts of reckless and deliberate indifference, Committed by Bureau employees,

(3)

and in collusion with American Correctional Assoc employees. Numerous violations of Constitutional law apply here. BOP staff have had ample opportunity to correct these deficiencies but for reasons unknown, have refused to do so.

12. I make no false allegations here, everything is factually supported by the many exhibits I will present in this complaint. I present limited caselaw at this time but I will list the Constitutional violations, at the end of everyone of the (4) issues presented.

13. I am not a lawyer, nor will I pretend to be one here or try to act like one. I'll lay aside my emotions & try to present a concise & clear description of each of the issues presented.

(A) 14. <u>GRIEVANCE PROCEDURE VIOLATIONS: (Issue One)</u>

Sometime in or around the year 2018, I discovered that a section of the federal prisoner grievance procedure, was "missing" from the BOP Program Statements, specifically section "5" of the CFR §542.14(d)(5), to which says:

> (5) Other requests for formal review of decisions <u>not originating</u> from the warden. Other than the exceptions listed above, formal administrative remedy requests re initial decisions that did not originate with the warden, or his/her staff, may be initially filed with the Bureau office which made the original decision & appealed directly to the General Counsel.
> **(Exhibit <u>B-1</u> )**

15. Then if you look at what is says in PROGRAM STATEMENTS, you

will see that the section **"5"** is missing. **(Exhibit_C-1____)**
Also in the FCI Seagoville Admissions & Orientation Infor-
rmation Handbook, that each federal prisoner is presented
upon entry to the institution, you'll see that CFR Title
28 §542.14(d)("5") is missing as well. **(Exhibit___D-1-(1__)**

16. I believe that some unknown Bureau employees, Sometime
    after June 18, 2010, "conspired" to hide this amended sec
    tion "5" of the grievance procedure. Further discovery by
         counsel is warranted to find out to whom these unk-
    nown "conspirators" are.

17. But, also consider that defendants CONNORS/(2) JOHN DOES-
    engaged in a conspiracy as well, as since 2018, I made them
    aware of the missing §542.14(d)("5") in Program Statements,
    but they did <u>nothing</u> to correct this most serious error.

18. Under District of Columbia law;

> The elements of civil conspiracy are: (1)
> an agreement between two or more persons;
> (2) to participate in an unlawful act, or
> in a lawful act in an unlawful manner; &
> (3) an injury caused by an unlawful overt
> act performed by one of the parties to the
> agreement; (4) pursuant to, and in furth-
> erance of, the common scheme. **Griva v.
> Davison, 637 A.2d 830, 848, (D.C. 1994)**

19. <u>**Note:**</u>  On the following grievances submitted, Defendant
    CONNORS "initials" are at the top of each grievance and
    the (2) JOHN DOES initials are marked near the middle of
    each grievance.

20. I wasnt sure  if the missing section "5" was just a typo or error committed by Bureau staff, So. I decided to file a BP-11 grievance at the Central Office level-on a issue that would of originated specifically at the BOP Central Office grievance level.

21. Below are a series of BP-11 grievances I filed to see if §542.14(d)("5") was valid or not. I state at the beginning of every grievance, actually what it states in §542.14(d)("5") "exceptions to Initial Filing at Institution". Sometimes the (d) is omitted by mistake.

22. <u>Note</u>: On the white page  attached to every BP-11 grievance returned to me unanswered, grievance staff give their reasons for rejecting at the Central Office level & instruct to refile at the institution level, but these are not valid reasons to reject said grievances, as I only filed on issues that "originated" from the Central Office Level. Whether grievance staff actually read these grievances, I dont know.

23. <u>Further note</u>:  I did refile at the institutional & Regional level, as instructed in the rejected reasons and as you can see in these two exhibits, both warden Zook &  Regional Director Baltazar, stated that neither of them had the authority to "override" Central Office policy! Musical chairs-games being played here by BOP staff. **(Exh M/R)** A brief synopsis/summary is included in each grievance:

24. <u>REMEDY ID #955189-A1</u> (Date Filed 7-24-2018 Rejected) Filed to Central Office in regards to Program Statements #4500.12 on "mailing labels" we are required to print out and place on outgoing mail. The mail scanning equipment in

25.  Washington DC used by federal agencies, "burns" the printed
     information right off of the label. The BOP HQ sets the
     policy on mailing labels, therefore, this "originated"
     in accordance to CFR §542.14(d)("5"). **(Exhibits  E 1-4     )**

26.  <u>REMEDY  ID #960819-A1</u>(Filed 10-15-18, Rejected)
     I filed this grievance on why §542.14(d)("5") was missing
     from Program Statements. I explain it is located in the CFR
     but deleted from Program Statements. **(Exhibits   F 1-4    )**
     <u>**note**</u>: I even attach copies of CFR §542.14(d)(5) and the
     Program Statements section demonstrating it is missing!

27.  **Further Note:** In the above mentioned grievance, This Lexis/
     Nexis is published by Matthew Bender Inc & this "CD" is
     mailed to each institution on average of every (35) days.
     Therefore because BOP staff conspired to hide this valuable
     grievance procedure information, <u>Title 18 USC §1341</u> mail
     fraud violations apply. That translates into roughly 13,420+
     criminal violations of mail fraud under federal statutes.

28.  <u>REMEDY ID #966331-A1</u>(Filed 12-12-18, Rejected)
     The Central Office placed a "nation-wide" Trulincs email
     block on a legal advocate group, "news@prisonlawblog.com".
     They publish news articles (3) times per week. Central Off-
     ice blocked them for reasons yet explained. **(Exhibit G 1-3 )**
     I did include a copy of §542.14(d)(5), as this decision
     "originated" from the Central Office. **(Exhibit  G-3    )**

29.  <u>REMEDY ID #975076</u>(Filed 3-21-19, Rejected)

30.  Filed on why the Central Office had not released or pub-
     lished a copy of the "amended" FIRST STEP ACT of 2018 &
     & placed it on the Trulincs electronic law library system,
     (Lexis/Nexis CD) for federal prisoners to to review and
     use to access the federal courts. **(Exhibit  H 1-2       )**

31.  <u>REMEDY ID #1059397-A1</u> (Filed 10-15-20) Rejected:

     Central Office issued yet another trulincs nation-wide
     email block against two legal advocates/attorneys to
     whom published weekly legal type newsletters. Brandon
     Sample immediately filed suit in federal court and the
     block was eventually removed by the Central Office.

                                          **(Exhibit  I 1-2  )**

32.  <u>REMEDY ID        </u> (Filed 10-29-20) Rejected:

     Central Office published First Step Act information on
     the BOP.gov website that was false & misleading, Advising
     prisoners whom wanted to file a request for Compassionate
     Release, to make a request to their "unit team". **(Exh J 1-2
     J1-2)**
     This contradicts what §571.61 states, that the CR request
     must be submitted to the warden only. Then warden is the
     one whom "initiates" a unit team investigation, <u>Not</u> the
     prisoner. **(Exhibit  J-7     )**

33.  <u>Note:</u> The following (2) page newsletter is from Jeremy
     Gordon Esq. He provides a "copy of" what this false info
     states. This email was recieved by Trulincs. **(Exh J 3-4  )**

Further Note: I am not sure if the following exhibits were attached to this grievance when I filed it or I later added [as notes] after receiving the rejected grievance. (Exhibits **J 5-6**         )

34.  <u>REMEDY ID #1070899-A1</u> (Filed      -2021) Grievance rejected:
Now, this court can see a clear example of "musical chairs" run around confusion. In exhibit grievance #960819-A1, I had filed on why §542.14 (d)("5") was "missing" from the Bureau Program Statements, it was rejected & I was told to refile at the "institution" level & this I did so, in the next grievance to warden Zook.  (Exhibit **L 1-6**   )

35.  <u>REMEDY ID #1070899-F1</u> (Filed 2-1021) Grievance DENIED:
The warden "returned" the BP-9 grievance with questions, as the warden had <u>never heard of</u> §542.14(d)("5")! The warden had attached two RED notes asking questions. (Exh **M 1-5**   )

36.  <u>Note:</u> The original red notes are attached (Exh **N-1**     ) and also attached  PS 1330.18 "d", with a ✱ marked next to "Exceptions to Initial

37.  Filing at Institution. (Exhibit **O-1**     )
<u>Note:</u> Warden Zook confirms in her (✱) red note, there is no section "5" in most updated PS1330.18-01/06/2014!

38.  I resubmitted grievance to warden Zook  after I had emailed her  to answer her questions in red notes. (Exhibit **P-1**   )

39.  Grievance #1070899-F1 was "denied"  and   "changes to the policy cannot be made on a local level"

40.  <u>REMEDY ID #1070899-R1</u> (Filed 3-19-21) TO REGIONAL DIRECTOR;
Director Baaltar did not reply withing the allowed timeframe & I appealed to Central Office. (Exhibit **R 1-2**   )

41. <u>Re #44.    Remedy ID #1070899R1:</u>

Note:    I  eventually  received  the  BP-10  grievance  back  from  the
          Regional Director & he stated in response;

                    "The Bureau of Prisons is not required to
                    include all the BOP regulations IN
                    Program Statements"...

Really. I have to wonder what "other" regulations the BOP might
be hiding from federal prisoners!

<u>(exhibit R-2)</u>

42. <u>REMEDY ID #1070899-A1</u> (Filed 6-11-21) Rejected:

(Exh E 1-2)

As  the  Regional  Director  violated  the  time  to  respond  to

the  BP-10,  I  went  ahead  and  appealed  it  to  Central  Office.

Central  Office  rejected  the  appeal  staing  that  I  didnt

provide  a  copy  of  the  BP-10,  yet  I  did  in  fact  follow

grievance  procedures  &  I  did  not  resubmit  the  BP-11

because  as  far  as  I  was  concerned,  I  properly  had  exhausted

the  grievance  procedures.  "Musical   chairs"  in  play  here.

43. <u>INSPECTOR GENERAL:</u>   I  filed  a  email  complaint  to  the

Department  of  Justice  Inspector  Genereal,  sometime  in  or

about  August  of  2021,  alerting  them  of  this  grievance

procedure  violation  &  requested  an  investigation.  They

have  had  over  a  year  to  investigate  &  correct  this  ser-

ious  problem  but  have  done  nothing  to  date.  The  email

was  sent  "one  way"  &  I  was  not  able  to  retain  a  copy  of  it.

(10)

(B) 44.    **Grievance Procedure Violations (ISSUE #2):**

This involves a denial of access to the Remedy grievance
Forms, Informal, Bp-9, BP-10 & BP-11, that the inmate must
use in order to file a grievance. These grievance forms
are not readily accessable or easy to obtain from BOP Staff.
As you can see in the attached Informal, Exhibit    , A staff
member refused to give me a BP-9 form in order to appeal the
Informal grievance.  **(Exhibit R-3)**

45.    **Remedy BP-9 # 1146417-F1:**(Dated 12-07-22) In my appeal to the
Warden, I offered a simple resolution to resolve the access-
ability of obtaining the grievance forms, place them inside
the buildings officers office, then the prisoner would have
24/7 access to all the grievance forms. Warden Rivers denied
the grievance.                        **(Exhibit R-4    )**

46.    **Remedy BP-10 #1146417R1   **(Dated 1-29-23) In my appeal to the
Regional Director, He also denied the grievance. He and Warden
Rivers bypassed my main complaint, the inability of the inmate
in being able to obtain the needed grievance forms from staff
members.                        **(Exhibit  R-5 )**

47.    **Note:** At a later date, I will present a plan  to the court, that
will ensure, through injunctive relief, that all such grievance
forms be placed with the duty Officers Station, accessable 24/7
& that a new mail procedure be implemented, whereas the inmate
can deposit the Informal & BP-9 grievance forms, within the
inmate mailbox, for seperate processing by mail room staff, thus
bypassing the Unit Team. I believe that Bureau staff are delib-
erately making it hard for the prisoner to access the grievance
forms, in order to "prevent" the prisoner from filing grievances
on Bureau misdeeds, staff misconduct, Rule violations, etc,

**(11)**

48.    REMEDY ID #1070899-A1 (Filed 6-11-21) Rejected:

(Exh E 1-2)

As the Regional Director violated the time to respond to the BP-10, I went ahead and appealed it to Central Office. Central Office rejected the appeal staing that I didnt provide a copy of the BP-10, yet I did in fact follow grievance procedures & I did not resubmit the BP-11 because as far as I was concerned, I properly had exhausted the grievance procedures. "Musical chairs" in play here.

49.    ## CONSTITUTIONAL VIOLATIONS

The First, Fifth, Eighth, and Fourteenth Amendments of the Constitution, the denial of due process, are in violation.

The Eighth Amendment-cruel & unusual punishment;
"Deliberate Indifference Standard"
Criminal & civil conspiracy violations;

§1985: Conspiracy to interfere with civil rights;

§241-Conspiracy against rights, §371-Conspiracry to commit offense or to defraud the United States; §1349-attempt & conspiracy; §242-Deprivation of rights under color of law;§1341-mail fraud; 42 USC 1997(e) violation of the Prisoners Litigation Reform Act; §4042-duties of the Bureau of Prisons.

**(12)**

(C) 50. <u>OVER CAPACITY/OVER CROWDING:</u>

The rated capacity pertaining to a "low security" federal institution, is 60 square feet per prisoner. Seagoville FCI has many dayrooms & (4) man rooms that violate the 60 sq ft rule. These rules in PROGRAM Statements regarding capacity, originated from the Bureau of Prisons HQ in Washington, DC. (Exh___S 1-3___)

51. Over capacity increases noise level, ventilation, fire codes, OSHA regulations & the Clean Air Act in violation. Prisoners also cannot "social distance" in accordance to CDC guidelines. (Exhibits _T 1-4, U,V,W,X,Y_)

52. <u>INFORMAL GRIEVANCE</u> (Filed 12-1-2020) Unresolved:
Written up in regards to the building I was residing in, E/6. The grievance was answered by Ms Evans, E/6 Unit Manager. (Exh _Z-1_ )

53. BP-9 GRIEVANCE TO WARDEN(Filed 1-7-21) #1066090F1 (Exh _AA 1-2_ )

54. Warden Zook states that the American Correctional Association (ACA) standards are in compliance, yet this is impossible, as overcapacity contirbutes to increased noise level, poor air ventilation, unable to social distance as is required, per warden's memo. (Exh _BB 1-3_ )


**Blank**



**Blank**

**(13)**

55.    Overcapacity BP-10 Grievance #1066090R1(Filed 2-23-21) Denied:

A rehash of everything previously covered in grievance to warden.
I do quote & reference the Wardens memos issued by email to the
prisoner population re "social distancing" rules. (Exh __CC 1-2__  )

56.    Regional Director Baltazar makes some disturbing comments:

> "rated capacity does not necessarily
> reflect the maximum occupancy or
> design or operating capacity of an
> institution or inmate housing area"

(This contradicts PS. (Exh __S 1-3__ )

> and

> "after careful auditing & review, the
> ACA has granted a "waiver" for the
> inmate housing areas."

57.    Overcapacity BP-11 Grievance #1066090A1(Filed 5-14-21) Denied:

I attack the ACA waiver on overcapacity that the Regional Director
states the ACA gave to BOP insitutions. I state that this waiver has
placed many prisoners lives in dangerous harm, not being able to
social distance per the 6 feet required by CDC & Warden Zook's
memorandums. I point out to IAN CONNORS that the ACA can only issue
guidelines or recommendations, as is is a private accrediatation
organization & has NO AUTHORITY federal law under USC §4042 obilgat-
ions or the Eighth Amendment.  (Exhibit __DD 1-2__  )

My complaints fall on deaf ears. This is extreme deliberate indiff-
erence. The Warden,Region Director,CONNORS make nothing by excuses
trying to justify their gross misconduct.

58.    I wish to share the following situation I was told by several E/6
prisoners prior to my living in that (12) man dayroom that should
of only held (4) prisoners due to (60) sq ft regulation. I'm sure

**(14)**

they'll be glad to testify in regards to this factual story. Sometime in the summer of 2021, Warden Zook and Associate Warden Bayless, came by to inspect building E/6.

Warden Zook went inside that (12) man dayroom & several of the prisoners residing in that overcapacity dayroom, complained to Zook about there being to many prisoners living in that dayroom, Bunk beds violating [her] memos on social distancing, poor ventilation/circulation issues, fire hazards, etc.

Warden Zook told them she would have several bunk beds "removed", so they could better social distance between their beds.  After exiting the dayroom, Warden Zook was overheard saying to AW Bayless;

> "Dont ever let me go in there
> [that dayroom] again!"

Note: Warden Zook never did remove  any of those double bunk beds like she said she would.

59.  Building E/6 has (2) 12-man dayrooms, (2) 6-man rooms, and the rest of the many living areas contain (5) men per room. The two six man rooms are smaller than the five man rooms! The  5 man rooms should only contain 2.4 prisoners, the six man rooms only (2) per room, The (12) man rooms should only contain (4) prisoners per room, per the 60 sq ft rule in Program Statements.

60.  <u>CONSTITUTIONAL VIOLATIONS</u>

Gross violation of the Eighth Amendment, cruel and  unusual punishment. Deliberate Indifference to prisoners health in overcrowding over capacity violations.  §4042(a)(1)(2)(3) duties of the Bureau of prisons are in gross violation.

(15)

(D) 61.    The AMERICAN CORRECTIONAL ASSOCIATION "Waiver":

As you can read in the overcrowding overcapacity grievances I had
filed, Bureau staff have adhered to ACA guidelines in spite of just
what Program Statements say in regards to overcapacity violations.

In reality of this Bureau catering to the ACA, then the ACA has
become a "quasi-governmental agency", as Warden Zook, regional
Director Baltazar, & Ian Connors, all adhere to these accreditation
recommendations [waiver] granted by the ACA.

62.    THE ACCREDITATION CON: A Broken Prison & Detention Facility Acc-
reditation System That Puts "profits" Over People. Prepared by the
office of Senator Elizabeth Warren, December 2020. (Exhibit EE 1-6 )

This is a damning investigation & its findings are quite shocking.

This report reveals that the ACA accreditation system is riddled
with "conflicts of interest", employs former retired "BOP wardens"
to whom conduct accreditation audits, "lacks transparency" and is
subject to ZERO ACCOUNTABILITY.

63.    These problems put the health & well being of incarcerated & detained
individuals, the staff and employees whom work in those  facilities
& our communities at risk. (quote). Key Findings include;

        -ACA creates an irreconcible conflict of interest;
        -The ACA accreditation process is a "rubber stamp";
        -Serious problems persist at ACA accredited facilities;
        -The ACA failed to "adapt" to COVID-19.

64.    BOP Staff have elected the ACA as the "fox" guarding the henhouse.

Due to the overcapacity problems here [at Seagoville FCI] when
COVID-19 first arrived here in late June of 2020, 1,300+ prisoners
contracted the COVID-19 virus, causing much suffering and (4)
prisoners ended up dying as a direct result of this deadly virus.

65.    Thousands of federal prisoners nation-wide contracted the COVID-19
virus and most suffered miserably. Hundreds of prisoners "died" as
a result of this deadly virus & "recovered" prisoners continue to
get re-infected and die. Seagoville FCI continues to have COVID-19
infections monthly.

Seagoville FCI has plenty of outlying space where the Warden could
of brought in temporary housing such a tents, to ease the overcrowd-
ing of living space for prisoners but did not.

66.    The Court stated in **ARCEO**;

>    "Seagoville is currently battling on of the most
>    serious COVID-19 outbreaks in the nation—it has
>    the highest number of positive inmates of ALL
>    federal prisons"...

>    "Alarmingly, a freezer [has] been installed in
>    the yard"...

>    "The quadrupling of the COVID-19 numbers at Sea-
>    goville plainly reflect the BOP is not under
>    taking effective, additional emergency measures
>    to slow the spread of the virus at the facility"

(US v ARCEO 2020 US Dist, LEXIS 125610 (7-15-20)
                                    (N.D.Cal)

67.    As the court can see, in spite of the Bureau's duties under §4042,
and in spite of its own rule book, Program Statements, The Bureau
would rather cater to a "capacity waiver" that supercedes federal
Statutes, rather than trying to resolve the overcrowding over
capacity disorder, The Bureau does nothing.

Thus, the ACA has been made a quasi-govermental agency by the Bureau
of Prisons.

68.    The ACA "History of Standards and Accreditation" says:

>    "According to the ACA, the purpose of accreditation
>    is to improve facility operations thru adherence
>    to clear standards relevant to all areas /operations
>    of the facility, including safety, security, order,
>    inmate care, programs, justice & administration"..

(WARREN REPORT, pg. (2))

69.    More damning information from the Warren Report;

"According to the ACA, the accreditation process
provides no guarantee of quality once complete:
[O]nce a correction facility is accredited or
re-accredited by ACA, it does not become ACA's
responsibility to monitor or enforce compliance"

(Exhibit EE   pg 11)

"Yet the ACA indicated it has not ever revoked
a facility's accreditation following reports
demonstrating critical features at accredited
facilities.."

(page 15)

"Problems with medical care, quarantine proced-
ures, testing protocol, and other health and
safety conditions were discovered at countless
other facilities, including those in Yazoo
City, Danbury, Glenville, Fort Worth, Coleman,
La Tuna, Tallahassee & Fairton. All of these
facilities currently hold accreditation from
the ACA."

(page 16)

70.    "Its all about the money":

The ACA grants a "waiver" so a Bureau insitution like Seagoville

FCI gets a 100% compliance rating and because of that 100% rating,

the Warden & other staff, Regional        Director, et cetera,

get awarded an incentive financial bonus monetary award! I

suspect the better the [compliance] rating, the more money gets

awarded to staff. What a scam.

71    I'm sure the ACA will be running to the court trying to get its-

self removed from this lawsuit, but it should be quite obvious

to this court, that the Bureau/Department of Justice, has app-

ointed the ACA as [a private] "quasi-governmental" agency over

the Bureau of Prisons.

72.    The ACA needs to be held accountable for its ongoing misconduct

in concert with Bureau of Prison employees & its failure to protect all federal and State prisoners throughout the United States. This double standard needs to end & hopefully this lawsuit will put an end to this illicit behavior.

73.
### CONSTITUTIONAL VIOLATIONS

The ACA in conjunction with Bureau staff, have engaged in Eighth Amendment violations. Deliberate Indifference.

Conspiracy, engaging in conduct to  in violation of §4042(1)(2)(3), §1985,1986 Conspiracy to interfere with civil rights;

§241—Conspiracy against rights;

§1349—Attempt & Conspiracy;

§242—Deprivation of rights inder color of law.

(E)74.
## COVID-19 Vaccinations/No Informed Consent Violations:

Seagoville FCI staff, namely Warden Zook, AW Jenkins and AW Bayless, have failed to post the correct COVID-19 vaccine information & advising prisoners of the vaccines side effects, or to make them aware medical staff had dis-continued giving out the Pfziver/Moderna  vaccines.

Seagoville FCI staff failed to inform the prisoner pop-ulation, that they were giving out another vaccine, the Johnson/Jessen vaccine & it poses far more serious side

**(19)**

effects, than the Pfziver/Moderna vaccines ever did. I found out about this in August 2021, when I was called to the medical dept to receive the vaccination.

75. I went to the medical dept on 8-03-2021 to receive the vaccine. I asked if they were giving me the Moderna vaccine. Unknown nurse, said No, we are giving out the Jessen vaccine. I inquired as to what "side effects" I might experience & the nurse stated she didnt know what the side effects were.

76. NO VACCINE SIGNAGE POSTED: There was no information posted that medical staff had discontinued the Moderna vaccine & were now distributing the Jassen vaccine. Nothing posted at medical dept or on the trulincs email bulletin board.

77. I went ahead and received the Jassen vaccine, though I had wanted the Moderna vaccine, as it offered better protection vs the Jassen vaccine. I experienced very serious side effects...fever/chills, severe fatigue, severe joint pains at a 9+ level scale re pain. I laid in bed for several days suffering. No monitoring was conducted by medical staff.

78. I immediately emailed Health Services Administrator "Bibbs" questioning why there no signage info posted regarding the Jessen vaccine. I never recieved any response.

79.   I forwarded Bibbs email to the Associate Warden. AW Bayless eventually responded (10) days later & attached a copy of the Jessen Vaccine information. **(Exhibits____FF 1-3____)**

80.   **Note:** Since last August 2021 to presently of the filing of this lawsuit, NO INFORMATION has ever been posted regarding the Jessen vaccine or its most serious side effects. As far as I know, the (7) page Jessen Fact Sheet was only ever given to me.                    **(Exhibit___GG 1-7___)**

81.   <u>INFORMAL GRIEVANCE(Filed 8-03-2021) Unresolved:</u>

I complained about there being no information on the Jessen vaccine & its serious effects it can cause. **(Exhibit HH 1-2 )**

82.   <u>BP-9 Grievance To warden Zook</u>(Filed 8-20-21 Unresolved:

Very detailed two page grievance. Explained the concept of "no informed consent" to the warden. The warden fails to explain why no Jessen vaccine info was ever posted, nor did she agree to post this info for prisoners to review & be made aware of.                    **(Exh___II 1-3___)**

83.   <u>BP-10 Grievance to Regional Director</u>(Filed 9-24-21):

Very detailed, I list violations of the FD & C Act §502 (f)(1), §301(a), §355(b)-dispensing a drug under a false or misleading label. Director Tellez fails to address the main complaint, the posting of the vaccine info & its very serious side effects.                    **(Exhibit LL 1-3 )**

83.  <u>BP-11 Grievance to Central Office</u>(12-9-22)Unanswered:

I have received no response to this grievance yet but I expect the Remedy Administrator "Connors" will follow suit & deny it. (**Exhibit** <u>MM-1</u>   )

84.  As the court can see, informed consent is in serious violation. Deliberate indifference applies. It would of been very "simple" for Seagoville FCI staff to post the Jessen Fact Sheet on vaccine info/side effects, on the trulincs email bulletin board or post on walls thru-out the compound.

I've seen Bureau staff do a lot of stupid stuff over the years but this takes the cake! There is just no valid excuse not to post this serious information, its like they were hiding it on purpose.

85.  I believe that medical staff & AW Bayless in concert with Warden Zook, purposefully & deliberately conspired to <u>not</u> post the Jessen vaccine info fact sheet because of the serious & fatal side effects listed, "blood clots, severe allergic reactions, Guillain Barre Syndrome" and none of these troubling side effects ever occurred with the Pfizer/moderna vaccines.

86.  On 8-18-2021, I filed a formal complaint with the Department of Health & Human Services. No response to date. (Exhibit <u>NN 1-5</u>   )

87.  In December of 2021, The Centers for Disease Control (CDC) had

.stated that they were NO LONGER recommending the Jassen vaccine due

to the fatal blood clots it was causing, resulting in 54+ deaths.

Seagoville FCI medical dept has also discontinued distributing the

Jassen vaccine to the prisoner population.. On 1-04-2022, medical

88.  here has started giving out the Moderna booster shot. **(Exh OO-1 )**

As my name was <u>not</u> on the booster shot list to receive it, I went

to the medical to inquire as to why I was not on the list. I was

told I had to wait "six months" afterreceiving the Jassen vaccine.

89.  On 1-10-2022, I emailed the new Health Services Administrator and

informing her that the CDC recommended the booster shot TWO months

after receiving the Jassen vaccine, not (6) months later. **Exh. PP-1)**

90..  I had previously emailed her regarding booster on 12-4-21. **Exh PP-2)**

91.  I emailed Associate Warden Jenkins inquiring about booster shot on

11-29-2021. It should be noted that I received <u>no</u> response to any

of these three emails. **(Exhibit PP-3 )**

92.  <u>Note:</u>  On 1-13-2022, Seagoville FCI had to quarantine building 54

that contains the RDAP & UNICOR prisoners , due to COVID-19/Omicron

virus infections. On 1-19-22, staff quarantined building E/6 be-

cause of more Omicron infections. On the 19th, according to the

BOP website, there were (27) prisoners, (14) staff here infected

with the virus. I'm sure the number of infections has increased.

93.  Here I am under vaccinated , should of received the booster shot

four months ago & the virus is running rampant all over here. Just

another example of deliberate indifference to prisoners health.

<u>Note:</u>  Did Bureau medical staff post any info on the booster shot

side effects? Ah no.

The same old "out of date" Pfizer/Moderna vaccine shot information is still posted on the prisoner bulletin boards in housing areas.

94.                    CONSTITUTIONAL  VIOLATIONS

The doctrine of "informed consent" is in gross violation, as is;

> A right to  receive such information as is
> necessary to make an informed decision to
> accept or reject proposed treatment, as well
> as a reasonable explanation of the viable
> alternative treatments that can be made in
> aprison setting., (1)

> Under the informed consent doctrine, doctors
> must also provide their patients with enough
> information  about the **risks of** the medical
> treatment that they can decide sensibly as
> to whether to submit to the treatment. (2)

> (1) WHITE v. NAPOLEAN, 897 F2d 103,113 (3d Cir 1990)
> CLARKSON v. COUGHLIN, 898 F Supp 1019, 1049,
> (SDNY) 1995, McALEESE v. OWENS, 770 F Supp 255,
> 263 (M.D. Pa. 1991) Deliberate indifference
> standard applied to failure to inform prisoner
> of adverse consequences of medication...

> (2) CRUZAN by CRUZAN v. Director, MO. Dept of Health
> 497 F2d U.S. 261, 269-77, 110 S. ct 2841(1990)
> MARINO v. BALLESTAS, 749 F2d 162, 167 (3dCir 84)
> HARBESON v. PARKE DAVIS, INC, 746 F2d 517, 521-
> 22 (9th Cir 1984), MATTER of CONROY, 98 N.J. 321
> 486, A. 2d 1209, 1222 (N.J. 1985)

95.   The Eighth Amendment of the US Constitution is in violation, "Deliberate Indifference" is an Eighth Amendment violation. §4042-Duties of the Bureau of Prisons are in violation.

**(24)**

96. I request this honorable court grant declaratory & preliminary and permanent injunctive relief and award compensatory and punitive monetary damages, for deprivation of the plaintiff's constitutional rights, by the defendants, Sued in their INDIVIDUAL & OFFICIAL capacities.

97. Regarding the American Correctional Association defendant's, I request the court award compensatory & punitive monetary damages in excess of **ten million dollars.**

The ACA has no Statutory authority to grant any "overcapacity" waivers, nor is Bureau staff required to oblige or obey such reckless waivers that endangered the health & safety welfare of all federal prisoners.

Seagoville FCI had (5) prisoners die related to COVID infections in 2021 & one in 2022.

98. The awarding of monetary damages is the only way to punish the defendants & hold them accountable, as the DELIBERATE INDIFFERENCE & Constitutional violations clearly demonstrated by all the defendant, is quite stifling & extreme. and has resulted in much needless suffering & deaths.

99. Attached or to follow shortly after filing this Complaint, I will petition the court to appoint counsel to represent me in accordance to Rule LCvR83.11.

Thank you.

**Respectfully Submitted,**

**Clay Keys #22458-017**
**Federal Correctional Institution**
**Po Box 9000**
**Seagoville, TX 75159**

7-1-23

**Date**